**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| MELODY SOUTHARD, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-15-61 |
| | * | |
| WICOMICO COUNTY BOARD OF | * | |
| EDUCATION, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In January, 2015, Plaintiff Melody Southard ("Plaintiff") brought this action against Defendant Wicomico County Board of Education ("the Board") following her termination from her teaching position in November, 2014. [ECF No. 1]. In her Amended Complaint, Plaintiff asserts five claims: (1) retaliation for Plaintiff's advocacy for her child's rights under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (2) interference with Plaintiff's rights under the Family Medical Leave Act ("FMLA"); (3) retaliation for Plaintiff's exercise of her FMLA rights; (4) negligent misrepresentation; and (5) intentional misrepresentation. [ECF No. 25]. Presently pending before the Court is Plaintiff's Motion for Partial Summary Judgment on Count II (FMLA interference). [ECF No. 8]. The Court has also reviewed the Board's Opposition and Plaintiff's Reply thereto. [ECF Nos. 15, 18]. Also pending before the Court is the Board's Motion to Dismiss, or, in the Alternative, for Summary Judgment, on all claims, [ECF No. 28], which effectively creates cross-motions for summary judgment on Count II. The Court has also reviewed Plaintiff's Opposition and the Board's Reply thereto. [ECF Nos. 32, 33]. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment will be

1

denied, and the Board's Motion to Dismiss, or, in the Alternative, for Summary Judgment will be granted in part and denied in part.

## I. THE BOARD'S MOTION TO DISMISS COUNTS I, III, IV, AND V

The Board seeks dismissal of this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary judgment pursuant to Federal Rule of Civil Procedure 56. A motion styled in this alternative "implicates the court's discretion under Fed. R. Civ. P. 12(d) to consider matters outside of the pleadings and, in doing so, to treat the motion as one for summary judgment." *Wright v. Kent Cty. Dep't of Social Servs.*, No. ELH-12-3593, 2014 WL 301026, at *5 (D. Md. Jan. 24, 2014); *see* 5C Wright & Miller, *Federal Practice & Procedure* § 1366 (3d ed.) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). Because the Court will not consider materials beyond the pleadings as to Counts I, III, IV, and V, it will review the Board's Motion under a motion to dismiss standard for these claims.

### A. Factual Background

Plaintiff began teaching at Wicomico County Public Schools in January, 2008. Am. Compl. ¶ 3. For the 2012-2013 and 2013-2014 school years, Plaintiff worked at Beaver Run Elementary as a kindergarten teacher. *Id.* ¶ 60. During this time, she was "subjected to constant verbal and written reprimands addressing a variety of complaints from allegedly insufficient lesson plans to having difficulty staying awake during a meeting to how the classroom is organized." *Id.* None of the other kindergarten teachers were subjected to this type of treatment

or heightened scrutiny.  *Id.*  In June, 2013, Plaintiff received her final evaluation for the school

year, which was overall satisfactory, with some subcategories rated unsatisfactory.  *Id.* ¶ 73.

In late September of the 2013-2014 school year, Plaintiff began requesting sick leave due

to the stress she was experiencing at work.  *Id.* ¶ 125.  On October 21, 2013, Plaintiff was placed

on a 90-day Performance Improvement Plan ("PIP"), scheduled to end on February 28, 2014.  *Id.*

¶¶ 77–78, 147; Def. Opp. to Pl. Mot. for Partial Summ. J. (hereinafter "Def. Opp."), Exh. 2.[1]

Her first due date under the PIP was October 30, 2013, where she was to provide the school

administration with her lesson plans for the following week.  *Id.*  Plaintiff called out sick on

October 30, 2013, but when she returned the next day, she did not provide the lesson plans, and

admitted that she did not have any for the week.  *Id.*, Exh. 3.

On November 7, 2013, Principal Melissa Eiler scheduled a meeting with Plaintiff and

Susan Jones, a human resources representative, for November 11, 2013 to discuss Plaintiff's

failure to turn in lesson plans pursuant to her PIP, among other things.  *Id.*, Exh. 5.  The next day,

Kelly Stephenson, a Wicomico County teacher writing on behalf of Plaintiff, requested that the

November 11, 2013 meeting be postponed, as Plaintiff was in the process of gathering

information to support an application for FMLA leave.  Am. Compl. ¶ 130, Exh. 3; *see also* Def.

Opp., Exh. 7 (Plaintiff's November 8, 2013 request for FMLA leave).  Moreover, Ms.

Stephenson requested, "Due to the fact Melody may be out for an extended period of time, I am

proposing that we look at the option of extending the time frame for the implementation of her

improvement plan until Melody returns to work."  Am. Compl., Exh. 3.  Vince Pavic, the

Director of Human Resources and Employee Relations, responded that, based on current

information, Plaintiff was expected to return to work on November 11, 2013, and he saw no

---

[1] In its Motion, the Board notes that it refers to the exhibits attached to its Opposition to Plaintiff's Motion for
Partial Summary Judgment (ECF No. 15).  The Court will do the same.

reason why the meeting should be postponed. *Id.* ¶ 131, Exh. 4.  Mr. Pavic also noted that "[Dr. Southard's] potential FMLA situation is separate and apart from her Improvement Plan (PIP) as well as this scheduled meeting/discussion." *Id.*  In addition, Mr. Pavic stated, "I also want to make sure to point out that bringing FMLA into the fold after the fact will not serve to shield Dr. Southard of any potential consequences for her as a result of her actions surrounding her job expectations." *Id.*

The November 11, 2013 meeting was not held, as Plaintiff had called out sick.  Def. Opp., Exh. 9.  Mr. Pavic rescheduled the meeting for December 16, 2013, this time including the school superintendent, Dr. Fredericksen ("the Superintendent").  Am. Compl. ¶ 139, Exh. 6.  However, by letter dated December 4, 2013, Plaintiff was approved for FMLA leave, retroactively effective as of November 4, 2013.  Am. Compl. ¶¶ 126, 140, Exh. 7; Def. Opp., Exh. 7.  In a letter dated January 10, 2014, Mr. Pavic advised Plaintiff to let him know when she was able to return to work, and "[a]t the time we will re-schedule the meeting with the Superintendent, which will need to take place prior to returning to your classroom at Beaver Run."  Am. Compl. ¶ 142, Exh. 8.

On January 28, 2014, Plaintiff e-mailed Mr. Pavic: "In response to your letter, I would like to begin planning for my return to work.  Please let me know the date and time for the meeting that is to take place prior to my return."  Am. Compl., Exh. 9; Def. Opp., Exh. 19.  A meeting was then scheduled for February 10, 2014.  *Id.*  Mr. Pavic explained to Plaintiff, "The purpose of this meeting is to give you an opportunity to explain your actions prior to going out on FMLA Leave to the Superintendent.  The meeting will determine what, if any, disciplinary action should be taken as a result of your behavior(s) prior to going out on leave." *Id.*

The February 10, 2014 meeting with the Superintendent occurred as scheduled.   Am. Compl. ¶ 145.   Following that meeting, Mr. Pavic notified Plaintiff, by letter dated February 11, 2014, that she was being temporarily placed on administrative leave with pay, effective immediately.   *Id.* ¶ 146, Exh. 10.   Plaintiff's FMLA leave ended on February 13, 2014.   *See* Def. Opp., Exh. 22.   After another meeting on March 20, 2014, the Superintendent notified Plaintiff, by letter dated April 3, 2014, that he was recommending to the Board that she be terminated for "misconduct, insubordination, incompetency, and willful neglect of duty."   Am. Compl. ¶ 153, Exh. 11.   The Superintendent noted specific areas of concern with Plaintiff's job performance:

> [L]ack of responsiveness to assigned tasks, duties and responsibilities, including, but not limited to: not making parent contacts, not entering benchmark data in a timely manner, and not entering report cards into the X2 program.   In addition, you failed to follow through on your Performance Improvement Plan, you failed to leave lesson plans for substitutes when you were absent, and you failed to adequately and appropriately communicate with the school administration.   You had also received a letter of reprimand in February, 2013.   You were provided an opportunity to discuss and respond to these concerns and problems.

*Id.*   After a two-day evidentiary hearing in September and October of 2014, a hearing examiner recommended that Plaintiff be terminated, which the Board adopted, effective November 15, 2014.   *Id.* ¶ 155, Exh. 2, 12–13.

### B.  Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief may be granted."   Fed. R. Civ. P. 12(b)(6).   A Rule 12(b)(6) motion to dismiss "test[s] the sufficiency of a complaint," and does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks omitted).   For a complaint to survive a Rule 12(b)(6) motion, the factual allegations contained therein "must be enough to raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   It is not sufficient that

the facts suggest "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations and internal quotation marks omitted). A complaint need not provide detailed factual allegations, but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).

When considering a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). The court need not, however, accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (internal quotation marks omitted). The court is not confined to the four corners of the complaint; rather, it may consider any documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), and documents attached to a motion to dismiss, but "only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (internal quotation marks omitted).

### C. Analysis

The Board argues that Count I in Plaintiff's Amended Complaint—retaliation in violation of the Rehabilitation Act—is duplicative of a claim Plaintiff asserted against the Board in

another pending lawsuit in this Court, SAG-14-323, or *Southard I*,[2] and thus should be dismissed.  The Board further argues that Plaintiff's FMLA retaliation claim (Count III) is implausible.  Lastly, the Board argues that Plaintiff's negligent misrepresentation claim (Count IV) and intentional misrepresentation claim (Count V) must fail because the Board made no misrepresentation to Plaintiff.  Each claim is addressed in sequence below.

### 1. Count I - Rehabilitation Act Retaliation

The Board argues that Plaintiff's allegation of retaliatory termination under the Rehabilitation Act is merely an additional aspect of, or "update" to, her claim in *Southard I* that she was retaliated against, in the form of adverse employment actions taken against her, for her advocacy of her child's rights under the Rehabilitation Act.  Def. Mot. 21.  *See* SAG-14-323, ECF No. 1.  In fact, many of the facts alleged in the Amended Complaint are taken verbatim from *Southard I*.  Def. Mot. 21.  Thus, the Board contends, Count I must be dismissed as duplicative.  Plaintiff argues that Count I is not duplicative of her claim in *Southard I* "simply because it recites introductory facts that relate to the case's background."  Pl. Opp. 6.  She notes that her termination "didn't even take place until November 13, 2014, well after the first complaint was filed."  *Id.*

Duplicative litigation, or claim splitting, "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004). Thus, "when a suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'"  *Id.* (quoting

---

[2] Judge Blake, who presided over *Southard I* before the parties consented to proceed before a U.S. Magistrate Judge, granted in part and denied in part the Board's motion to dismiss.  *See* SAG-14-323, ECF No. 19.  Plaintiff's remaining claim in *Southard I* is for retaliation, in the form of adverse employment actions taken against her, under the Rehabilitation Act: "[The Board's motion to dismiss] will be denied as to Southard's remaining Rehabilitation Act claims, which are premised on retaliatory conduct directed at Southard's condition of employment."  *Id.* at 17.

*Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d. Cir. 2000)).  When determining whether the second suit duplicates the first, the court considers (1) whether the second suit "arises out of the same operative facts," and (2) whether the "interests of judicial economy and avoiding vexatious litigation outweigh the plaintiff's interest in bringing the second suit." *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 883 (D. Md. 2012).  If so, the court "may stay the second suit, dismiss it without prejudice, or consolidate the two actions." *Hare v. Opryland Hosp., LLC*, No. DKC-11-1439, 2011 WL 6153128, at *2, n.2 (D. Md. Dec. 9, 2011) (citing *Curtis*, 226 F.3d at 139).

Here, while it is true that Plaintiff's termination did not occur until close to a year after Plaintiff filed *Southard I*, nothing precluded Plaintiff from seeking leave to amend her complaint in *Southard I* to reflect this new event, which clearly related to her pending Rehabilitation Act retaliation claim.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  However, rather than dismissing Count I in this case as duplicative, and directing Plaintiff to seek leave to file an amended complaint in *Southard I*, the Court sees no reason why the two cases should not be consolidated.  *See, e.g.*, *Mason v. Montgomery Cty.*, Nos. PWG-13-1077, PWG-14-3718, 2015 WL 3891808, at *5–6 (D. Md. June 23, 2015) (consolidating cases where plaintiff's termination, the basis for the second case, was the final act in a series of allegedly discriminatory acts that plaintiff alleged in the first case).

The Court recognizes that the two complaints here are not identical, since, in the instant case, or *Southard II*, Plaintiff adds claims for FMLA interference, FMLA retaliation, and misrepresentation.  For purposes of judicial economy, however, since the two cases involve the same parties, stem from a history of the same operative facts, and involve overlapping discovery, it makes sense for a single jury to hear all claims asserted by Plaintiff against the Board.[3]  Thus,

---

[3] The Court notes that, in both cases, Plaintiff timely demanded a jury trial.

the Court will consolidate *Southard I* and *Southard II*, and the Board's Motion to Dismiss is denied as to Plaintiff's Rehabilitation Act retaliation claim.[4]

### 2.  Count III - FMLA Retaliation

Next, the Board argues that Plaintiff's retaliatory termination claim under the FMLA is implausible and must be dismissed.  Although the FMLA statute itself does not contain an explicit prohibition against retaliation, the FMLA regulations provide that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c).  To establish a *prima facie* case of retaliation, Plaintiff must prove that: (1) she engaged in a protected activity, (2) the Board took adverse action against her, and 3) that the adverse action was causally connected to Plaintiff's protected activity.  *See Green v. YRC, Inc.*, 987 F. Supp. 2d 654, 655 (D. Md. 2013).

Here, the parties do not dispute that Plaintiff engaged in a protected activity—taking FMLA leave—and that the Board took adverse action against her—termination.  As to the third element, Plaintiff alleges that "[t]he termination was causally connected to the Plaintiff's activity because Vincent Pavic held the fact that Plaintiff took FMLA against her."  Am. Compl. ¶ 161. Namely, Plaintiff refers to Mr. Pavic's suggestion that Plaintiff was using FMLA to "shield herself" from her employment obligations, which, according to Plaintiff, impacted his decision to include the Superintendent in the rescheduled meeting on December 16, 2013.  *Id* ¶ 136.; *see* Def. Mot., Exh. 2 (Hearing Transcript), pp. 369–70.  Plaintiff also argues that the temporal proximity between the end of her FMLA leave and the Superintendent's recommendation of dismissal creates an inference of causation.

---

[4] Such consolidation does not preclude the parties from later seeking summary judgment on Plaintiff's Rehabilitation Act retaliation claim, since summary judgment arguments have not been briefed.

Plaintiff's allegations are sufficient to withstand a motion to dismiss.  While the Board argues that, even in situations where temporal proximity is present, an inference of retaliation does not arise if adverse job actions began *before* the plaintiff engaged in any protected activity, Def. Mot. 35–36, this rule only applies where timing is the *only* basis for a retaliation claim.  *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006).  Here, Plaintiff focuses mainly on Mr. Pavic's statements to establish alleged retaliation.  Those statements, in addition to the temporal proximity between the meeting held on February 10, 2014, the placement on administrative leave on February 11, 2014, the end of FMLA leave on February 13, 2014, and the Superintendent's recommendation of dismissal on April 3, 2014, while far from conclusively establishing a causal connection between Plaintiff's FMLA leave and her termination, collectively at least preclude dismissal of Plaintiff's FMLA retaliation claim at this stage.  Accordingly, the Board's Motion is denied as to Plaintiff's FMLA retaliation claim.

### 3.  Counts IV and V - Negligent and Intentional Misrepresentation

Finally, the Board argues that Plaintiff's negligent and intentional misrepresentation claims should be dismissed because they fail to allege sufficient facts to support a plausible claim for relief.[5]  The Court agrees.

To state a claim for negligent misrepresentation, Plaintiff must allege that:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that his statement would be acted upon by the plaintiff; (3) the defendant had knowledge that the plaintiff would probably rely on the statement, which, if erroneous, would cause loss or injury; (4) the plaintiff, justifiably, took action in reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence.

*Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (citations omitted).

To state a claim of intentional or fraudulent misrepresentation, Plaintiff must allege that:

---

[5] The Board contends that Plaintiff presents these claims as conditional.  However, Plaintiff's Amended Complaint removed this language.  *See* Am. Compl. ¶¶ 163, 183.

(1) the defendant made a false statement of material fact to the plaintiff; (2) its falsity was either known to the defendant or the representation of fact was made with reckless indifference as to its truth; (3) the misrepresentation of fact was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied upon the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury from the misrepresentation.

*Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 566 (D. Md. 2012).

Plaintiff alleges that the Board negligently asserted to her the false statement that "Plaintiff had FMLA rights." Am. Compl. ¶¶ 165–66. Plaintiff claims that the Board "led Plaintiff to believe that she was covered under the FMLA," "never informed Plaintiff that Defendant was immune from the FMLA," and "never informed Plaintiff that she was not in fact protected by the FMLA." *Id.* ¶¶ 167–69. In addition, Plaintiff alleges that the Board "purposely tells its employees that they have [FMLA] rights knowing that they don't," and that the Board "wants employees to believe they have FMLA rights" when it "knows all along that it's immune from the FMLA." *Id.* ¶¶ 183–85. Plaintiff claims that, had she been told the truth about her rights under the FMLA, she would not have taken leave while on a PIP, and, because Plaintiff relied on the Board's false statement, she lost her job. *Id.* ¶¶ 187–88.

Plaintiff's allegations are without merit. The statement that "Plaintiff had FMLA rights" is not made false by the fact that the Board may have Eleventh Amendment immunity to certain claims asserted against it for an FMLA violation. A state employer's Eleventh Amendment immunity does not take away an employee's rights under the FMLA. Rather, immunity limits the potential remedies the employee may seek for the employer's FMLA violation (i.e. injunctive relief as opposed to monetary relief), which is separate and distinct from any rights the employee may enjoy pursuant to the FMLA statute. *See Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1338, 1350 (2012). In other words, whether the Board can assert that it has Eleventh Amendment immunity for an FMLA violation claim brought against it does not affect whether

Plaintiff is "protected by" or "covered under" the FMLA.  Thus, Plaintiff cannot make out a claim for negligent or intentional misrepresentation, since there was no false statement made to Plaintiff.

Moreover, as to Plaintiff's intentional misrepresentation claim, specifically, the Board is correct that Plaintiff failed to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (noting that the "circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby") (citations omitted).  Thus, even if Plaintiff had sufficiently alleged a "false statement of material fact," her claim would still fail. For these reasons, the Board's Motion is granted as to Plaintiff's negligent and intentional misrepresentation claims.

## II.  CROSS-MOTIONS FOR SUMMARY JUDGMENT ON COUNT II

The Court incorporates by reference the facts set forth in Section I.A.  Any additional relevant facts are discussed in the Analysis, *infra*.

### A.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  A party seeking summary judgment bears the burden of showing that there is no evidence to support the non-moving party's case, and must only show an

absence of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In response, the non-moving party must show that there is a genuine issue for trial.  *Id.*

When considering a motion for summary judgment, the court "must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant." *McLean v. Ray*, 488 F. App'x 677, 682 (4th Cir. 2012) (citations and internal quotation marks omitted).  The court's role is to determine whether there is a genuine issue for trial, not "to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations marks omitted).

### B. Analysis

Both parties move for summary judgment on Plaintiff's claim that the Board interfered with her exercise of her rights under the FMLA.  Specifically, Plaintiff argues that the Board scheduled meetings that required her attendance when she was out on FMLA leave, and failed to restore her to the position she held before taking FMLA leave.  The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).  To establish unlawful interference, Plaintiff must prove that:

> (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.

*Green,* 987 F. Supp. 2d at 649.  Here, the Board does not dispute that Plaintiff meets the first four elements.  In addition, Plaintiff must prove "not only the fact of interference, but also that

the violation prejudiced her in some way." *Ranade v. BT Americas, Inc.*, 581 F. App'x 182, 184 (4th Cir. 2014).

### 1.  Scheduling of Meetings

Plaintiff claims that the Board interfered with her exercise of her FMLA rights when it scheduled disciplinary meetings with Plaintiff when she was out on FMLA leave, "thus interfering with her ability to fully exercise her leave."  Pl. Opp. 8.  Plaintiff claims that such scheduling prejudiced her because it caused rescheduling efforts that reflected negatively on her performance.  *Id.* at 7–8.

Plaintiff's FMLA leave retroactively began on November 4, 2013, and ended on February 13, 2014.  As of November 20, 2013, however, Plaintiff's FMLA request had not been approved because she had not submitted all the required paperwork.  *See* Def. Opp., Exhs. 12, 16.  Thus, the meetings that were scheduled on November 7, 2013 for November 11, 2013, and on November 15, 2013 for December 16, 2013, were not scheduled when Plaintiff was out on FMLA leave, but rather when the Board was working from the information provided in Plaintiff's doctor's notes about when Plaintiff could return to work.[6]  Although it appears that Mr. Pavic scheduled a meeting for December 16, 2013 a few days after Plaintiff provided a doctor's note advising that she could not return to work until seen by a specialist, this meeting never actually occurred.  There is also no evidence that the cancellation of those earlier meetings reflected negatively on the Board's evaluation of Plaintiff's performance.

---

[6] In a note dated November 4, 2013, Plaintiff's doctor advised that Plaintiff may not return to work until November 11, 2013.  Def. Opp., Exh. 4.  In a note dated November 10, 2013, Plaintiff's doctor advised that Plaintiff may not return to work until November 12, 2013.  *Id.*, Exh. 8.  In a note dated November 13, 2013, Plaintiff's doctor advised that Plaintiff may not return to work until seen by a specialist.  *Id.*, Exh. 11.

However, it is unclear whether Mr. Pavic's requirement that Plaintiff meet with the Superintendent prior to returning to work effectively required Plaintiff to schedule and attend a meeting while still on FMLA leave, especially since there was initial confusion as to when Plaintiff's FMLA leave ended. *See* Def. Opp., Exh. 22. While Plaintiff initiated the scheduling, and did not object when Mr. Pavic scheduled a meeting for February 10, 2014, she may have been provided with a no-win situation—either come in for a meeting when she was on FMLA leave, or do not come back to work at all. *See* Def. Opp., Exh. 17 (December 13, 2013 doctor's note stating that "[Ms. Southard] has the insight to understand that the meeting needs to take place in the near future and feels, as I do, that she should be able to attend such a meeting in early January 2014"). Thus, there is a genuine dispute as to whether scheduling and attending the February 10, 2014 meeting interfered with Plaintiff's FMLA rights, and both parties' summary judgment motions will be denied on this issue.

### 2. Termination and Restoration of Rights

Plaintiff also claims that the Board's decision to terminate her interfered with her right to be restored to the position she held before she took FMLA leave. Pl. Mot. 7–9. An employee who takes FMLA leave has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced," or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). This right is not, however, absolute. Rather, "an employer may deny restoration when it can show that it would have discharged the employee in any event regardless of the leave." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 548 (4th Cir. 2006); *see* 29 C.F.R. § 825.216(a). For example, in *Yashenko*, the employee's FMLA interference claim failed when his employer established that, while the employee was on FMLA

leave, it made an independent business decision to reorganize its finance department, thus eliminating the employee's position. *Yashenko*, 446 F.3d at 550.

The Board argues that, because Plaintiff did not appeal her termination to the Maryland Board of Education, she has not exhausted her administrative remedies, and thus she may not, directly or indirectly, challenge the basis for her termination.  In any event, the Board contends, Plaintiff was terminated for legitimate reasons, unrelated to her FMLA leave.  Each of these arguments is addressed in turn.

### i. Exhaustion of Administrative Remedies

The Board argues that Plaintiff is estopped from challenging the basis for her termination in this Court because she did not appeal her termination to the Maryland State Board of Education ("the State Board"), as provided for by Maryland Education Article § 6-202(a)(4) ("The individual may appeal from the decision of the county board to the State Board.").  Def. Opp. 17–18.  Moreover, the Board argues, the hearing examiner explicitly found that the Superintendent's recommendation for Plaintiff's termination was not based on Plaintiff's FMLA leave requests.  *See id.*, Exh. 1 (Hearing Examiner Report), p. 39 ("I find that Dr. Southard's recommendation for dismissal is not based on her medical leave or family leave requests. Principal Eiler testified that the recommendation for termination was not at all based on Dr. Southard's taking her sick leave."); p. 41 ("I do not find that Dr. Southard's request for Family Medical Leave Act leave was the cause of the Superintendent's recommendation of termination.").  The Board contends that, because the hearing examiner made this explicit finding, and the Board adopted the hearing examiner's report, and Plaintiff did not appeal the Board's decision, Plaintiff is bound by the hearing examiner's determinations.  Def. Opp. 18. While the Board concedes that the FMLA itself does not contain an exhaustion requirement, it

argues that, because Plaintiff elected to insert her FMLA claims into the termination hearing, the hearing examiner's findings regarding those claims acquired a preclusive effect.  Def. Reply 11. The Board's arguments are unpersuasive.[7]

First, Plaintiff is not challenging the Board's basis for her termination in this lawsuit. Rather, at issue here is whether the Board interfered with Plaintiff's right to restoration under the FMLA when it terminated her for, in part, not following through on her PIP, since the reason she could not follow through on her PIP was because she was on FMLA leave.  Plaintiff does not contest that she did not follow through on her PIP, which effectively would be challenging the basis for her termination.  Thus, the Board's contention that Plaintiff cannot challenge the basis for her termination, either directly or indirectly, without first exhausting her administrative remedies, misses the mark.

Even so, Plaintiff had no obligation to exhaust her administrative remedies regarding her termination before bringing FMLA claims before this Court.  The Board relies on *Arroyo v. Board of Education of Howard County*, 381 Md. 646, 851 A.2d 576 (2004), wherein the Maryland Court of Appeals discussed how the administrative remedies provided for by § 6-202 of the Education Article are primary but not exclusive, and thus "a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy." *Id.* at 662, 586.  The Court of Appeals noted that the Education Article implicitly grants primary jurisdiction to a county board of education, and thereafter the State Board, "in questions involving controversies and disputes arising under the Education Article."  *Id.* at 663, 587; *see, e.g.*, *Bd. of Educ. for Dorchester Cty. v. Hubbard*, 305 Md. 774, 506 A.2d 625 (1986) (where

---

[7] The Court notes that the hearing examiner's finding that the Superintendent's recommendation for Plaintiff's termination was not based on Plaintiff's FMLA leave requests relates more to retaliation, not interference.  Because the Court finds the Board's exhaustion arguments unpersuasive, this point is irrelevant.

there were issues involving grievances about teacher certifications and class sizes, exhaustion of administrative remedies before the State Board was required before alternative judicial remedy could be adjudicated in a judicial forum).

However, exhaustion of administrative remedies is not required when the judicial cause of action—here, FMLA interference—is wholly independent of the statutory scheme that contains the administrative remedy—here, Maryland Education Article § 6-202—and does not rely upon the expertise of the administrative agency—here, the State Board. *See Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 65–66, 706 A.2d 1060, 1070 (1998); *cf. Arthur v. Ticor Title Ins. Co. of Fla.*, 569 F.3d 154, 161 (4th Cir. 2009) (requiring exhaustion of administrative remedies where plaintiffs' claim was dependent on the Maryland Insurance Code, and implicated the expertise of the Maryland Insurance Commissioner).  While the State Board is charged with the "last word on any matter concerning educational policy or the administration of the system of public education," *Clinton v. Bd. of Educ. of Howard Cty.*, 315 Md. 666, 676, 556 A.2d 273, 279 (1989), such expertise is not germane to Plaintiff's FMLA claim, nor may the State Board "decide finally purely legal questions."  *Bd. of Educ. of Talbot Cty. v. Heister*, 392 Md. 140, 154, 896 A.2d 342, 351 (2006); *cf. Arthur*, 569 F.3d at 161 ("The Commissioner would be in a better position than a federal court to determine, for example, whether plaintiffs are correctly interpreting the rate structure that Ticor filed with the Commissioner.").

Thus, Plaintiff was not required to exhaust her administrative remedies regarding her termination pursuant to § 6-202, and this Court can properly adjudicate the merits of her FMLA claims.

### ii.  Reasons for Termination

The Board argues that Plaintiff was terminated for legitimate reasons, unrelated to her FMLA leave; namely, for "misconduct in office, insubordination, incompetence, and willful neglect of duty." Def. Opp. 17.  The Board stresses that Plaintiff's termination was based on her actions prior to her taking FMLA leave, dating as far back as September, 2012.  *Id.* at 19; Def. Reply 9.  For example, in Plaintiff's first formal teaching observation at Beaver Run Elementary on October 1, 2012, Plaintiff received satisfactory ratings, but was advised of areas that needed improvement.  Def. Opp., Exh. 1, ¶ 12.  The Board claims that these concerns continued and heightened over the course of the 2012-2013 school year.  Def. Reply 10; *see* Def. Opp., Exh. 1, ¶¶ 13–34.  For example, Plaintiff continuously failed to prepare lesson plans, she missed faculty meetings, and she failed to complete benchmark assessments of her students and turn in other required reports.  *Id.*  When Plaintiff returned for the 2013-2014 school year, the previous concerns raised in the 2012-2013 school year were still apparent, in particular, Plaintiff's failure to prepare lesson plans.  *See id.* ¶¶ 38–40.

Plaintiff argues that, while the Board maintains that all of her performance issues predated her FMLA leave, the school administration still opted to place her on a 90-day PIP in October, 2013.  Pl. Reply 2–3.  If the Board felt that her performance was so egregious, Plaintiff argues, the administration would have terminated her, not placed her on a PIP.  Pl. Opp. 12.  Plaintiff contends that the sole reason she could not follow through on her PIP was because she was on FMLA leave.  *Id.* at 10.  Indeed, Plaintiff's PIP began on October 21, 2013, and while she missed her first deadline on a date she called out sick, she was absent for most of November onwards, until her eventual termination.  Because she was not given a sufficient opportunity to

adhere to her PIP, Plaintiff argues, the Board cannot show that it would have terminated her regardless of her taking FMLA leave. *Id.* at 12.

While the Board underscores that it was not required to place Plaintiff on a PIP prior to her termination, in this case it did, and the Superintendent recommended Plaintiff's termination, in part, because Plaintiff failed to follow through on her PIP. *See* Def. Opp., Exh. 25. In addition, several of the talking points for the initial meeting scheduled with Plaintiff, Principal Eiler, and Ms. Jones for November 11, 2013—that was eventually held on February 10, 2014 with the Superintendent and Mr. Pavic, among others—involved Plaintiff's PIP: "1. Plans for PIP due date of 10/30;" "4. Anecdotal Records due 11/4 as per PIP;" "6. Plans for PIP due 11/6." *Id.*, Exh. 5. Mr. Pavic also noted in an e-mail to the Superintendent on November 13, 2013 that "Melody has not done any work on her Improvement Plan," yet also noted that "Melody has not been at work for 8 of the first 9 work days this month." *Id.*, Exh. 10. Immediately after the February 10, 2014 meeting, Plaintiff was placed on administrative leave, and after another meeting, the Superintendent recommended Plaintiff's termination. Without further development of the record, it is not yet clear how much of a role Plaintiff's lack of follow through on her PIP contributed to her termination, or whether she would have been discharged regardless of this factor, and thus regardless of her taking FMLA leave. Thus, a genuine dispute of material fact exists, and both parties' summary judgment motions on this issue will be denied.

## III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment [ECF No. 8] is DENIED. The Board's Motion to Dismiss, or, in the Alternative, for Summary Judgment [ECF No. 28] is DENIED as to Counts I, II, and III, and GRANTED as to Counts IV and V. The Court will consolidate *Southard I* with this case. A separate Order follows.

Dated:  August 20, 2015

_____/s/_____
Stephanie A. Gallagher
United States Magistrate Judge